ORIGINAL

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024

Mark Hardiman (SBN 136602)
Katherine A. Bowles (SBN 287426)
**NELSON HARDIMAN LLP**
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024
Telephone:   (310) 203-2800
Facsimile:    (310) 203-2727
Email:    mhardiman@nelsonhardiman.com
              kbowles@nelsonhardiman.com

Attorneys for Relator
Advantage Analytics, LLC



LACV2000687-VAR-GJSx

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ADVANTAGE ANALYTICS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>HUMANA, INC., a Delaware Corporation,<br>Defendant. | CASE NO.:<br><br>**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT, 31 U.S.C. §§ 3729-3733**<br><br>**(FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2))**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

744932.v1

Plaintiff United States of America ("United States"), by and through Relator Advantage Analytics, LLC ("Relator"), alleges as follows:

## INTRODUCTION

1. Relator brings this action on behalf of the United States of America against Humana, Inc. ("Humana"), a Medicare Advantage Organization ("MAO"), for treble damages and civil penalties under the False Claims Act, Title 31, United States Code, Sections 3729 – 3732 ("FCA").

2. From 2016 to the present, Humana engaged in a massive fraudulent scheme to maximize Humana's revenue from the Medicare Advantage Program at the expense of both the United States Treasury and hospitals which provide necessary inpatient services to Medicare beneficiaries, including those enrolled in this Medicare managed care program, by knowingly retaining program risk adjustment payments for Hierarchal Condition Categories ("HCC") diagnoses reported by Humana from inpatient hospital claims for Medicare beneficiaries despite rejecting those HCC diagnoses as a basis for paying the hospitals' claims.

3. Humana's fraud scheme was three-pronged. First, Humana would report patient HCC diagnoses from the hospitals' inpatient claims to the Center for Medicare & Medicaid Services ("CMS") in order to obtain risk adjustment payments for patients enrolled in Humana Medicare Advantage products. Second, Humana would either deny the hospitals' inpatient claims containing such HCC diagnoses entirely or would audit paid claims and systematically assess and collect "overpayments" on the ground that the patient HCC diagnoses supporting such risk adjustment payments were allegedly medically unsupported and inadequately documented. Third, despite its obligation under the Medicare Advantage Program to correct any errors in its submitted risk adjustment data, Humana would fail to delete or correct the patient HCC diagnoses supporting its risk adjustment payments that were included in hospital inpatient claims that were denied or that its later claim

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

2

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

744932.v1

audits determined were erroneous, and would not refund the excess payments that it had received based on such diagnoses to CMS.

4. Instead, by retaining the risk adjustment payments that Humana had received based on HCC diagnoses reported in denied claims or for which the plan later recouped audit overpayments, Humana knowingly concealed and improperly avoided repaying to CMS the risk adjustment overpayments that Humana received based on such diagnoses and which did not increase its cost of covering services for Medicare Advantage patients, and the Humana RACs conspired with Humana to conceal and avoid Humana's resulting obligation to refund such overpayments. In 2017 and 2018 alone, this massive fraud has conservatively caused Humana to wrongfully retain more than $900 million in risk adjustment overpayments that Humana knew should not have been paid and that Humana was not entitled to keep. In addition, Humana was having its cake and eating it too by keeping the CMS risk adjustment overpayments based on these incorrect HCC diagnoses while at the same time denying hospital claims containing such diagnoses and recovering claim overpayments for such diagnoses from the hospitals.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1345. The Court may exercise personal jurisdiction over Humana under 31 U.S.C. § 3732(a) because it was and is doing business within this District.

6. Venue is proper in this District under 31 U.S.C. § 3732 and 28 U.S.C. § 1391(b) because Humana transacted business in this District and a substantial part of the events giving rise to the above-captioned action occurred in this District, including Humana's denial of HCC diagnoses contained in inpatient claims for Medicare beneficiaries submitted by hospitals located in this District for which Humana knowingly retained Medicare Advantage risk adjustment payments.

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

3

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

744932.v1

7. Prior to filing this complaint, Relator voluntarily disclosed to the United States the information on which the allegations and transactions described in this action are based.

## PARTIES

### Relator

8. Relator brings this action on behalf of Plaintiff United States and its agency, the United States Department of Health and Human Services ("DHHS") and its component, CMS, which administers the Medicare Program. At all times material to this action, CMS has been an agency within the DHHS and has administered the Medicare Advantage Program, which paid benefits from funds provided by the Federal Government. CMS provided Medicare benefits to qualified recipients, which included payment of claims to Humana for its provision of benefits to Medicare Advantage members.

9. Relator Advantage Analytics, LLC is a Delaware limited liability company with its principal place of business in Los Angeles, California. Relator has direct and independent knowledge of Humana's claim denials of Medicare Advantage patient HCC diagnoses submitted by a group of 40 hospitals and the financial impact of those HCC diagnosis denials on the Medicare Advantage risk adjustment payments received by Humana for those patients.

### Defendant

10. Defendant Humana, Inc. ("Humana") is a Delaware corporation which, on information and belief, has its principal place of business located in Louisville, Kentucky. Humana is a diversified managed health care company that provides an array of healthcare insurance products and healthcare services directly and through its wholly owned subsidiaries. Humana is a Medicare Advantage Organization which operates Medicare Advantage plans in approximately 22 states which cover care for over 3 million Medicare beneficiaries, including beneficiaries residing in

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

4

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

744932.v1

the Central District of California. Humana is the third largest health insurance company in the nation.

## STANDING

## FACTUAL ALLEGATIONS

### The Medicare Advantage Program

11. Medicare is a federally run health insurance program benefitting those who are age 65 and older and the disabled. Enacted in 1965, the program initially consisted of Medicare Parts A and B, both insurance programs that cover inpatient and outpatient services, respectively. Under Parts A and B, Medicare pays providers enrolled in these fee-for-service ("FFS") programs based on set fees for each service (or bundle of services) that they provide.

12. In 1997, Congress enacted Medicare Part C, under which Medicare beneficiaries can elect to enroll in a Medicare Advantage plan, a managed care plan administered by a private insurance company that has entered into a contract with CMS to be a MAO. Medicare Advantage plans provide all Medicare Parts A and B benefits, and most offer additional benefits beyond those covered under the original Medicare program. Under its federal contract, the MAO is paid a monthly fixed or "capitated" fee by the federal government to care for each Medicare Advantage plan enrollee regardless of the amount or type of health care services the member actually uses. Over the past few years there has been an upward trend in enrollment in the Medicare Advantage Program. Currently, about 27% of Medicare beneficiaries are enrolled in Medicare Advantage plans, with the majority enrolled in Medicare Advantage HMOs.

13. Initially, CMS's capitated payments to MAOs were based solely upon enrollee demographic information, such as age and gender. In 2000, to improve the accuracy and fairness of payments, and to mitigate "cream-skimming" by Medicare Advantage plans (i.e., the preferential selection of the healthiest, low-cost/high return enrollees), CMS began implementing a new Medicare Advantage plan

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

5

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

744932.v1

payment model – known as the CMS-Hierarchical Condition Category model ("CMS-HCC") – that uses demographic and diagnostic information to adjust the payment for each plan enrollee by assigning a "risk score," or "risk adjustment factor" ("RAF") score, to each enrollee based on the health risk of each plan enrollee and the predicted expenditures for that enrollee in the following year relative to the national average. Under this CMS-HCC model, CMS's risk adjustment payments to a MAO are higher for plan enrollees with major medical conditions (e.g., high RAF scores) and lower for healthy enrollees (e.g., low RAF scores). This new risk adjustment reimbursement model became fully effective in 2007. *See Medicare Managed Care Manual* ("MMCM"), Pub. # 100-16, ("MMCM"), Ch. 7, §§ 20, 50, 70, 70.5.1, Ch. 8, § 50.

14.     In order to obtain Medicare risk adjustment payments, CMS requires a MAO to submit accurate diagnosis codes from the International Classification of Diseases, 10th Edition, Clinical Modification ("ICD-10-CM") for each condition that is supported by the enrollee's medical record. Under the CMS-HHC model, the primary indicator of each enrollee's health status is the ICD-10-CM diagnosis codes assigned by Medicare Advantage plan providers to the enrollee and reported by the MAO in Risk Adjustment Processing System ("RAPS") files submitted at least quarterly to CMS through the agency's Front End Risk Adjustment System (FERAS) and RAPS Database. Healthy enrollees will have no ICD-10-CM diagnoses codes, while less healthy enrollees may have multiple ICD-10-CM diagnosis codes. The MAO's reported diagnosis codes drive the RAF scores assigned by CMS to Medicare Advantage enrollees for a particular year and those RAF scores in turn drive CMS's risk adjustment payments to the MAO for those enrollees during the next year. *See* MMCM, Ch. 7, §§ 110, 120, 120.1.1, 120.2, 120.2.3, 120.2.7.

15.     CMS groups the ICD-10-CM diagnosis codes that it receives from the MAO plan into separate disease categories known as Hierarchal Condition

6

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

744932.v1

Categories or HCCs. The HCCs are based upon the type of disease and the costs of treating that disease. A plan enrollee may have one or more HCCs. Based on the enrollee's HCCs and demographics, CMS calculates the RAF score for the enrollee which determines the risk adjustment payment – consisting of the Medicare Advantage plan's base capitation rate multiplied by the enrollee's risk score – to be made to the MAO for that plan enrollee for the next year. The higher an enrollee's RAF score, the higher the risk adjustment payment. Generally, only ICD-10-CM codes associated with major medical conditions (e.g., diabetes, cancer, heart disease, kidney failure, respiratory failure, major psychiatric disorders,) will result in increased CMS risk adjustment payments to the MAO. The CMS-HCC models "are prospective in the sense that they use diagnosis information from a base year to predict costs for the next year." *See* MMCM, Ch. 7, §§ 70, 70.1, 110, Ch. 8, § 50.

16. Each calendar year, CMS adjusts each Medicare Advantage plan enrollee's RAF score based on the array of ICD-10-CM diagnoses reported in the MAO's claims during the prior year. If the provider claims for the enrollee during that year do not contain the same ICD-10-CM diagnosis codes supporting the prior RAF score, then CMS will lower the enrollee's applicable RAF score for the next year. As stated in the Medicare Managed Care Manual, "Beneficiary risk scores are used to adjust each plan's base payment rate for member health status. The RAF score is computed for each beneficiary for a given year and applied prospectively. The RAF score follows the beneficiary for one calendar year." *See* MMCM, Ch. 8, § 50.

17. The MAO's reporting of ICD-10-CM diagnoses for plan enrollees determines what HCC codes are assigned by CMS to the Medicare Advantage plan enrollees. CMS is unable to verify the accuracy of ICD-10-CM diagnosis codes when the MAO submits them because the agency is not provided with supporting medical documentation at the time of such submission. Instead, CMS relies upon the MAO to submit accurate and medically supported ICD-10-CM codes diagnoses in

7

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

the first instance, and also to delete any diagnoses later determined by the MAO to be incorrect because the MAO's reporting of unsupported ICD-10-CM codes for major medical conditions will improperly increase CMS's risk adjustment payments to the MAO.

18.    Unfortunately, this system creates an incentive for MAOs to improperly inflate their enrollees' capitation rates. With data for millions of people being submitted each year, CMS is unable to confirm diagnoses before calculating capitation rates. Instead, the agency accepts the diagnoses as submitted, and then audits some of the self-reported data a few years later to ensure that they are adequately supported by medical documentation. *See* 42 C.F.R. §§ 422.310(e), 422.311; Contract Year 2015 Policy and Technical Changes to the Medicare Advantage and the Medicare Prescription Drug Benefit Programs, 79 Fed. Reg. 1918, 2001 (Jan. 10, 2014). These audits have revealed excess payments for unsupported diagnoses steadily increasing over the last decade, reaching an estimated $16.2 billion—nearly ten cents of every dollar paid to MAOs—in 2016 alone. *See* James Cosgrove, U.S. Gov't Accountability Office, GAO-17-761T, *Medicare Advantage Program Integrity: CMS's Efforts to Ensure Proper Payments and Identify and Recover Improper Payments*, 1 (2017), available at https://www.gao.gov/assets/690/685934.pdf; James Cosgrove, U.S. Gov't Accountability Office, GAO-13-206, *Medicare Advantage: Substantial Excess Payments Underscore Need for CMS to Improve Accuracy of Risk Score Adjustments*, 9–10 (2013), available at https://www.gao.gov/assets/660/ 651712. pdf.

19.    Each year, the MAO must sign an attestation form certifying upon best knowledge, information, and belief that the ICD-10-CM diagnosis codes and other risk adjustment information submitted to CMS were accurate, complete, and truthful.   42 C.F.R. § 422.504(l)(2). The attestation form also contains an acknowledgment by the MAO that the diagnoses submitted directly affect the

8

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

744932.v1

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

calculation of CMS risk adjustment payments to the MAO's Medicare Advantage plans. Under Medicare regulations, this MAO certification is false "when the Medicare Advantage organization has actual knowledge of the falsity of the risk adjustment data or demonstrates either 'reckless disregard' or 'deliberate ignorance' of the truth or falsity of the data." 42 C.F.R. § 422.504(l). *U.S. v. Humana Healthcare Insurance Company*, 848 F.3d 1161, 1169 (9th Cir. 2016), citing 65 Fed. Reg. 40170, 40268 (June 29, 2000). The importance of accurate data certifications is obvious: if patient diagnoses are overstated, then the capitation payments to MAOs will be improperly inflated.

20. Like all Medicare providers, a MAO must return any overpayments based on its reported risk adjustment data to CMS within 60 days after the date on which it identified it received an overpayment. 42 U.S.C. § 1320a-7k(d). A MAO's failure to return an overpayment is actionable under the FCA as a reverse false claim. *Id.* at § 1320a-7k(d)(3).

Humana's Medicare Advantage Fraud

21. Relator Advantage Analytics, LLC is affiliated with a group of 40 hospitals in 13 states (collectively, the "Medicare Sample Hospitals") that serve thousands of Medicare Advantage patients, many of whom are beneficiaries of Humana's Medicare Advantage plans. By helping serve the needs of these Medicare Advantage beneficiaries treated at the Medicare Sample Hospitals, Relator has developed significant expertise with the laws applicable to the Medicare Advantage Program as well as the HCC model that governs MAO reimbursement.

22. In 2017, certain Medicare Sample Hospitals began receiving an unusual number of overpayment demands from Humana based on Humana claim audits in connection with their 3,328 claims for healthcare services provided to Humana's Medicare Advantage beneficiaries. As one of the larger Medicare Advantage plans and commercial insurance plans in the United States, Humana applied significant pressure on these Medicare Sample Hospitals to refund claim payments, either in

9

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

744932.v1

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

whole or in part, based on Humana's determination that certain diagnoses reported on their claim forms for Medicare Advantage plans were medically unsupported or inadequately documented. For example, during 2017, Humana assessed and collected approximately $294,619 in overpayments based on Humana claim audits for denied diagnoses from the approximate $890,785 million in reimbursement initially paid to the Medicare Sample Hospitals for their services to 93 Medicare Advantage beneficiaries.

23. While MAO audits and overpayment demands are routine occurrences for a group of 40 hospitals, Humana's audit overpayment demands to the Medicare Sample Hospitals based on the Humana audits were a statistical anomaly compared to its prior history of audits and were also typically initiated well over year after the claims were submitted and paid. Relator also immediately noticed that a significant number of Humana's overpayment demands based on its audits were based on its denial of Medicare Advantage patient diagnoses that qualified as HCCs which Humana would have reported for those patients to CMS for Medicare risk adjustment purposes.

24. In 2018, Humana's audits and overpayment demands to the Medicare Sample Hospitals continued.

25. Examples of the Humana MAOs' denials of diagnoses for Medicare Advantage patients treated at the Medicare Sample Hospitals in 2017 and 2018 include the following:

a. On September 17, 2017, Humana denied ICD-10 code J13 (pneumonia due to streptococcus pneumoniae) which is categorized under HCC 115 for Sample Patient # 1, who was seen and treated at Medicare Sample Hospital #18 between May 17 and 22, 2017;

b. On December 30, 2017, Humana denied ICD-10 code N170 (acute kidney failure with tubular necrosis) which is categorized under HCC 135 for

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

744932.v1

Sample Patient # 2, who was seen and treated at Medicare Sample Hospital # 38 between June 14 and 22, 2017;

c. On March 5, 2018, Humana denied ICD-10 code E43 (unspecified severe protein calorie malnutrition) which is categorized under HCC 21 for Sample Patient # 3, who was seen and treated at Medicare Sample Hospital # 33 between August 18 and 23, 2017;

d. On April 2, 2018, Humana denied ICD-10 code N17.9 (acute kidney failure, unspecified) which is categorized under HCC 135 for Sample Patient # 4, who was seen and treated at Medicare Sample Hospital # 20 between November 28 and 30, 2017;

e. On April 9, 2018, Humana denied ICD-10 code A419 (sepsis, unspecified organism) which is categorized under HCC 2 for Sample Patient # 5, who was seen and treated at Medicare Sample Hospital # 6 between September 27 and October 5, 2017;

f. On April 9, 2018, Humana denied ICD-10 code A419 (sepsis, unspecified organism)  which is categorized under HCC 2 for Sample Patient # 6, who was seen and treated at Medicare Sample Hospital # 38 between September 17 and 26, 2017;

g. On August 23, 2018, Humana denied ICD-10 code A419 (sepsis, unspecified organism) which is categorized under HCC 2 for Sample Patient # 7, who was seen and treated at Medicare Sample Hospital # 12 between February 12 and 17, 2018;

h. On October 8, 2018, Humana denied ICD-10 code N170 (acute kidney failure with tubular necrosis) which is categorized under HCC 135 for Sample Patient # 8, who was seen and treated at Medicare Sample Hospital # 7 between December 24 and 30, 2017;

i. On October 9, 2018, Humana denied ICD-10 code N170 (acute kidney failure with tubular necrosis) which is categorized under HCC 135 for

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

11

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

744932.v1

Sample Patient # 9, who was seen and treated at Medicare Sample Hospital # 18 between May 31 and June 4, 2018;

j. On November 9, 2018, Humana denied ICD-10 code A419 (sepsis, unspecified organism) which is categorized under HCC 2 for Sample Patient # 10, who was seen and treated at Medicare Sample Hospital # 38 between April 23 and 29, 2018;

k. On January 2, 2019, Humana denied ICD-10 code A419 (sepsis, unspecified organism) which is categorized under HCC 2 for Sample Patient # 11, who was seen and treated at Medicare Sample Hospital # 20 between December 26 and 29, 2017; and

l. On April 9, 2019, Humana denied ICD-10 code A419(sepsis, unspecified organism) which is categorized under HCC 2 for Sample Patient # 12, who was seen and treated at Medicare Sample Hospital # 12 between April 13 and 17, 2018.

26. Based on the sheer volume of Humana's overpayment demands to the Medicare Sample Hospitals based on the Humana audits of only one subset of Humana's Medicare beneficiaries – Medicare Advantage patients – and involving the denial of diagnoses previously reported by Humana to CMS that qualified as HCCs resulting in higher Medicare risk adjustment payments to Humana for those patients, Relator questioned whether Humana was correcting and deleting these diagnoses in its prior risk adjustment data submissions to CMS and refunding any risk adjustment overpayments that it received as a result of those diagnoses. As a result, Relators performed and supervised a complex statistical analysis to determine whether Humana could obtain the level of CMS risk adjustment payments it was receiving given the rate at which Humana was later denying HCC diagnoses supporting those payments based on Humana RAC audits and also denying claims containing such HCC diagnoses without any payment at all.

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

12

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

744932.v1

### a. Humana 2018 Risk Adjustment Overpayments for 2017 Medicare Sample Hospital MA Patients With Denied HCC Diagnoses

27. As reflected in its annual reports, Humana's Medicare Advantage plans covered 3,193,000 Medicare beneficiaries in 2016 and 3,302,200 Medicare beneficiaries in 2017. Medicare Advantage paid Humana an average monthly base rate per member of $816 in 2016 and $842 for 2017. Humana's total reported revenue from the Medicare Advantage program was approximately $36.1 billion in 2016 and $37.8 billion in 2017. In its Annual Report filing with the U.S. Securities and Exchange Commission ("10-K") for 2017 ("2017 10-K"), Humana estimated that 71% of its total premium and services revenue in 2017 were generated from its Medicare Advantage services.

28. In order to assess the financial impact of Humana's denial of diagnoses that had been previously reported to CMS in support of the risk adjustment payments that Humana received, Relator first calculated what Humana's Medicare Advantage risk adjusted payments would have been in 2018 based on the 2017 RAF scores for 93 Medicare Advantage patients for whom claims were submitted at the 40 Medicare Sample Hospitals in 13 states before Humana's later audits denied HCC diagnoses for such patients. As set forth in the chart below, after normalization and coding adjustments for the Medicare Sample Hospitals,[1] the average RAF score for these 93 patients was 2.034 which, based on the various regional Medicare Advantage base payment rates would have resulted in 2018 Humana risk adjusted payments totaling an estimated $1,931,647, with HCC inpatient diagnoses accounting for

_____

[1] CMS's normalization factor is a downward adjustment to adjust the Medicare Advantage beneficiaries' RAF scores to that of FFS data so that the average RAF risk score in subsequent years is 1.0 and its coding pattern adjustment recalibrate this FFS coding data. These CMS factors are available at https://www. cms.gov/ medicare/health-plans/medicareadvtgspecratestats/downloads/announcement2017. pdf.

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

744932.v1

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

approximately $927,191 in reimbursement and the remaining $1,004,456 million attributable to HCC diagnoses made in the hospitals' outpatient or post-acute care settings:

| CMS Region | Number of Patients | Sample Patients Average RAF Score | 2018 Region Base Rate | 2018 United MA Payments |
|---|---|---|---|---|
| 10 | 1 | 2.071 | $833 | $20,690 |
| 24 | 10 | 2.148 | $859 | $221,538 |
| 9 | 3 | 2.463 | $872 | $77,258 |
| 8 | 17 | 1.597 | $834 | $271,720 |
| 15 | 33 | 2.090 | $832 | $688,547 |
| 22 | 2 | 2.028 | $902 | $43,874 |
| 12 | 3 | 1.652 | $843 | $50,120 |
| 6 | 4 | 1.929 | $839 | $77,739 |
| 17 | 20 | 2.271 | $881 | $480,162 |
| **Totals** | **93** | **2.034** | | **$1,931,647** |

29.    Next, Relator calculated the impact on the RAF scores of the 93 Medicare Advantage patients of Humana's subsequent audit denials of HCC diagnoses reported by the Medicare Sample Hospitals for such patients. This analysis was limited to Humana's denials of HCC inpatient diagnoses only reportable by hospitals (comprising 86% of the denials) and did not include HCC outpatient and post-acute care diagnoses (comprising 13% of the denials) since these latter diagnoses could be reported to Humana by other providers. The 103 HCC inpatient diagnoses denied by Humana were as follows:

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

14

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

744932.v1

| HCC | ICD -10 Code | Code Description | Number of Denials |
|---|---|---|---|
| 2 | A419 | Sepsis, unspecified organism | 25 |
| 135 | N170 | Acute kidney failure with tubular necrosis | 24 |
| 21 | E43 | Unspecified severe protein-calorie malnutrition | 15 |
| 114 | J156 | Pneumonia due to other aerobic Gram-negative bacteria | 7 |
| 114 | J690 | Pneumonitis due to inhalation of food and vomit | 5 |
| 84 | J9600 | Acute respiratory failure, unspecified whether with hypoxia or hypercapnia | 3 |
| 135 | N179 | Acute kidney failure, unspecified | 3 |
| 85 | I5033 | Acute on chronic diastolic (congestive) heart failure | 2 |
| 85 | I5043 | Acute on chronic combined systolic (congestive) and diastolic (congestive) heart failure | 2 |
| 84 | J9601 | Acute respiratory failure with hypoxia | 2 |
| 84 | J9621 | Acute and chronic respiratory failure with hypoxia | 2 |
| 2 | R6510 | Systemic inflammatory response syndrome (SIRS) of non-infectious origin without acute organ dysfunction | 2 |
| 2 | A4102 | Sepsis due to Methicillin resistant Staphylococcus aureus | 1 |
| 21 | E41 | Nutritional marasmus | 1 |
| 21 | E440 | Moderate protein-calorie malnutrition | 1 |
| 86 | I214 | Non-ST elevation (NSTEMI) myocardial infarction | 1 |
| 85 | I5021 | Acute systolic (congestive) heart failure | 1 |
| 115 | J13 | Pneumonia due to Streptococcus pneumoniae | 1 |
| 84 | J9620 | Acute and chronic respiratory failure, unspecified whether with hypoxia or hypercapnia | 1 |
| 84 | J9690 | Respiratory failure, unspecified, unspecified whether with hypoxia or hypercapnia | 1 |

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

15

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

744932.v1

| 107 | K55039 | Acute (reversible) ischemia of large intestine, extent unspecified | 1 |
|---|---|---|---|
| 176 | T83511A | Infection and inflammatory reaction due to indwelling urethral catheter, initial encounter | 1 |
| 176 | T84092A | Other mechanical complication of internal right knee prosthesis, initial encounter | 1 |
| | **Total:** | | **103** |

30. The cumulative HCC RAF score for these 2017 HCC diagnosis codes from Medicare Sample Hospitals denied by Humana FY was 0.485. On information and belief, Humana's failure to delete or correct these HCC diagnosis codes submitted to CMS therefore resulted in a risk adjustment overpayment of $459,073 with respect to the Medicare Advantage patients treated at the Medicare Sample Hospitals, as follows:

| CMS Region | Number of Patients | Average RAF Score for Denied HCCs | Normalized RAF score | MA coding pattern adjusted score | 2018 Region Base Rate | 2018 Humana MA Overpayment |
|---|---|---|---|---|---|---|
| 10 | 8 | 0.268 | 0.264 | 0.248 | $833 | $2,478 |
| 24 | 105 | 0.589 | 0.579 | 0.545 | $859 | $56,181 |
| 9 | 13 | 0.407 | 0.400 | 0.377 | $872 | $11,814 |
| 8 | 45 | 0.523 | 0.514 | 0.484 | $834 | $82,324 |
| 15 | 31 | 0.546 | 0.537 | 0.505 | $832 | $166,534 |
| 22 | 12 | 0.439 | 0.431 | 0.406 | $902 | $8,779 |
| 12 | 144 | 0.445 | 0.438 | 0.412 | $843 | $12,497 |
| 6 | 16 | 0.642 | 0.632 | 0.594 | $839 | $23,940 |
| 17 | 8 | 0.483 | 0.475 | 0.447 | $881 | $94,526 |
| **Total:** | **93** | | | | | **$459,073** |

b. <u>Humana 2018 Risk Adjustment Overpayments for 2017 Medicare Sample Hospital MA Patients With Zero Pay Claims</u>

31. In addition, on information and belief, Humana also failed to correct or delete the 2017 HCC diagnosis codes that it reported to CMS for 406 Medicare

16

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

744932.v1

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

Advantage patients for whom the Medicare Sample Hospitals submitted claims that Humana paid zero dollars on. These 309 HCC inpatient diagnoses were as follows:

| HCC | ICD-10 Code | Code Description | Number of Denials |
|---|---|---|---|
| 135 | N179 | Acute kidney failure, unspecified | 44 |
| 135 | N170 | Acute kidney failure with tubular necrosis | 42 |
| 2 | A419 | Sepsis, unspecified organism | 25 |
| 2 | R6510 | Systemic inflammatory response syndrome (SIRS) of non-infectious origin without acute organ dysfunction | 18 |
| 21 | E440 | Moderate protein-calorie malnutrition | 16 |
| 85 | I5033 | Acute on chronic diastolic (congestive) heart failure | 14 |
| 21 | E441 | Mild protein-calorie malnutrition | 13 |
| 84 | J9600 | Acute respiratory failure, unspecified whether with hypoxia or hypercapnia | 11 |
| 85 | I5023 | Acute on chronic systolic (congestive) heart failure | 10 |
| 84 | J9620 | Acute and chronic respiratory failure, unspecified whether with hypoxia or hypercapnia | 9 |
| 114 | J690 | Pneumonitis due to inhalation of food and vomit | 8 |
| 84 | J9621 | Acute and chronic respiratory failure with hypoxia | 8 |
| 84 | J9601 | Acute respiratory failure with hypoxia | 7 |
| 2 | R6511 | Systemic inflammatory response syndrome (SIRS) of non-infectious origin with acute organ dysfunction | 7 |
| 114 | J156 | Pneumonia due to other aerobic Gram-negative bacteria | 6 |
| 85 | I5043 | Acute on chronic combined systolic (congestive) and diastolic (congestive) heart failure | 5 |
| 86 | I214 | Non-ST elevation (NSTEMI) myocardial infarction | 3 |
| 107 | I2699 | Other pulmonary embolism without acute cor pulmonale | 3 |

17

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

744932.v1

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

| HCC | ICD-10 Code | Code Description | Number of Denials |
|---|---|---|---|
| 85 | I5031 | Acute diastolic (congestive) heart failure | 3 |
| 2 | A4189 | Other specified sepsis | 2 |
| 21 | E41 | Nutritional marasmus | 2 |
| 100 | I639 | Cerebral infarction, unspecified | 2 |
| 108 | I82411 | Acute embolism and thrombosis of right femoral vein | 2 |
| 84 | J9602 | Acute respiratory failure with hypercapnia | 2 |
| 84 | J9690 | Respiratory failure, unspecified, unspecified whether with hypoxia or hypercapnia | 2 |
| 107 | K55039 | Acute (reversible) ischemia of large intestine, extent unspecified | 2 |
| 169 | M4856XA | Collapsed vertebra, not elsewhere classified, lumbar region, initial encounter for fracture | 2 |
| 75 | G709 | Myoneural disorder, unspecified | 1 |
| 87 | I249 | Acute ischemic heart disease, unspecified | 1 |
| 85 | I5041 | Acute combined systolic (congestive) and diastolic (congestive) heart failure | 1 |
| 108 | I82421 | Acute embolism and thrombosis of right iliac vein | 1 |
| 84 | J80 | Acute respiratory distress syndrome | 1 |
| 33 | K5669 | Other intestinal obstruction | 1 |
| 33 | K659 | Peritonitis, unspecified | 1 |
| 27 | K7290 | Hepatic failure, unspecified without coma | 1 |
| 170 | M80051A | Age-related osteoporosis with current pathological fracture, right femur, initial encounter for fracture | 1 |
| 170 | M80052A | Age-related osteoporosis with current pathological fracture, left femur, initial encounter for fracture | 1 |
| 2 | R6520 | Severe sepsis without septic shock | 1 |
| 167 | S065X9A | Traumatic subdural hemorrhage with loss of consciousness of unspecified duration, initial encounter | 1 |
| 169 | S32019A | Unspecified fracture of first lumbar vertebra, initial encounter for closed fracture | 1 |
| 169 | S32039A | Unspecified fracture of third lumbar vertebra, initial encounter for closed fracture | 1 |

18

COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

744932.v1

| HCC | ICD-10 Code | Code Description | Number of Denials |
|---|---|---|---|
| 169 | S32049A | Unspecified fracture of fourth lumbar vertebra, initial encounter for closed fracture | 1 |
| 169 | S3210XA | Unspecified fracture of sacrum, initial encounter for closed fracture | 1 |
| 170 | S32511A | Fracture of superior rim of right pubis, initial encounter for closed fracture | 1 |
| 170 | S32591A | Other specified fracture of right pubis, initial encounter for closed fracture | 1 |
| 170 | S32601A | Unspecified fracture of right ischium, initial encounter for closed fracture | 1 |
| 170 | S329XXA | Fracture of unspecified parts of lumbosacral spine and pelvis, initial encounter for closed fracture | 1 |
| 170 | S72001A | Fracture of unspecified part of neck of right femur, initial encounter for closed fracture | 1 |
| 170 | S72002A | Fracture of unspecified part of neck of left femur, initial encounter for closed fracture | 1 |
| 170 | S72142A | Displaced intertrochanteric fracture of left femur, initial encounter for closed fracture | 1 |
| 58 | T483X2A | Poisoning by antitussives, intentional self-harm, initial encounter | 1 |
| 58 | T484X2A | Poisoning by expectorants, intentional self-harm, initial encounter | 1 |
| 134 | T8241XA | Breakdown (mechanical) of vascular dialysis catheter, initial encounter | 1 |
| 176 | T83518A | Infection and inflammatory reaction due to other urinary catheter, initial encounter | 1 |
| 176 | T84023A | Instability of internal left knee prosthesis, initial encounter | 1 |

32.    The cumulative HCC RAF score for these 2017 HCC diagnosis codes reported in the Medicare Sample Hospitals' claims for which Humana paid zero was 1.406. Humana's failure to delete or correct these HCC diagnosis codes submitted to CMS therefore resulted in a 2018 risk adjustment overpayment of $5,875,030 with respect to the Medicare Advantage patients treated at the Medicare Sample

19

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

744932.v1

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

Hospitals, as follows:

| CMS Region | Number of Patients | Average RAF Score for Zero Pay HCCs | Normalized RAF score | MA coding pattern adjusted score | 2018 Region Base Rate | 2018 Humana MA Overpayment |
|---|---|---|---|---|---|---|
| 10 | 34 | 1.379 | 1.356 | 1.276 | $833 | $433,405 |
| 24 | 14 | 1.657 | 1.629 | 1.533 | $859 | $221,252 |
| 9 | 3 | 2.176 | 2.139 | 2.013 | $872 | $63,152 |
| 8 | 4 | 0.918 | 0.903 | 0.850 | $834 | $34,005 |
| 11 | 18 | 1.416 | 1.393 | 1.310 | $831 | $235,208 |
| 15 | 138 | 1.490 | 1.465 | 1.379 | $832 | $1,899,607 |
| 4 | 2 | 2.385 | 2.345 | 2.206 | $874 | $46,262 |
| 22 | 83 | 1.763 | 1.733 | 1.631 | $902 | $1,464,587 |
| 12 | 39 | 1.507 | 1.481 | 1.394 | $843 | $549,631 |
| 6 | 8 | 1.508 | 1.482 | 1.395 | $839 | $112,387 |
| 2 | 3 | 2.564 | 2.521 | 2.372 | $838 | $71,545 |
| 17 | 60 | 1.268 | 1.246 | 1.173 | $881 | $743,989 |
| **Total:** | **406** | | | | | **$5,875,030** |

b.    Estimated Humana Risk Adjustment Overpayments for Total 2017 MA Population

33.    While Relator has been unable to confirm whether Humana was denying HCC diagnosis codes at other hospitals at the same rate as for Medicare Sample Hospitals without correcting or deleting such those HCC diagnosis codes from its 2017 RAP data, an extrapolation of Humana's denial rate for the Medicare Sample Hospitals to the entire Medicare Advantage population of 3,302,200 million in 2017 results in an estimated annual risk adjustment overpayment of $104,330,24, as follows:

| | |
|---|---|
| Total Medicare MA population | 3,302,200 |
| Medicare managed care hospital IP utilization rate | 25% |
| Percentage of Medicare Sample Hospital IP denials with diagnosis code denials | 3% |
| Percentage of Medicare Sample Hospital diagnosis denials with HCC impact | 86% |
| Average RAF score of Medicare Sample Hospital denied | 0.524 |

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

744932.v1

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

| HCC diagnosis codes | |
|---|---|
| Normalized RAF score of Medicare Sample Hospital denied HCC diagnosis codes | 0.515 |
| MA coding pattern adjusted score | 0.485 |
| Monthly Humana risk adjustment overpayment for total Medicare MA population | $8,694,187 |
| Yearly Humana risk adjustment overpayment for total Medicare MA population | $104,330,245 |

34.     Similarly, an extrapolation of Humana's zero payment rate for the Medicare Sample Hospitals to the entire Medicare Advantage population of 3,302,200 million in 2017 results in an estimated annual risk adjustment overpayment of $464,513,145, as follows:

| Total Medicare MA population | 3,302,200 |
|---|---|
| Medicare managed care hospital IP utilization rate | 25% |
| Percentage of Medicare Sample Hospital IP denials with diagnosis code denials | 12% |
| Percentage of Medicare Sample Hospital diagnosis denials with HCC impact | 33% |
| Average RAF score of Medicare Sample Hospital denied HCC diagnosis codes | 1.520 |
| Normalized RAF score of Medicare Sample Hospital denied HCC diagnosis codes | 1.495 |
| MA coding pattern adjusted score | 1.406 |
| Monthly Humana risk adjustment overpayment for total Medicare MA population | $38,709,429 |
| Yearly Humana risk adjustment overpayment for total Medicare MA population | $464,513,145 |

35.     In summary, in 2018, Humana received estimated Medicare risk adjustment overpayments totaling approximately $568,843,390, consisting of approximately $104,330,24 for Medicare Advantage HCC denial accounts and $464,513,145 for Medicare Advantage zero payment accounts. Using the same extrapolation methodology, in 2017, Humana received estimated Medicare risk adjustment overpayments totaling approximately $287 million.

21

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

744932.v1

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

c.    Humana's Retention of MA Overpayments Based on Incorrect HCC Diagnoses That It Knowingly Failed to Correct

36.    Relator's statistical studies demonstrate that when adjusted for denials of Medicare Sample Hospital claims by Humana based on or including incorrect HCC diagnoses, the risk adjustment payments made to Humana in 2017 and 2018 would have decreased significantly, thereby creating an obligation on the part of Humana to correct the 2016 and 2017 HCC diagnoses relied on by CMS to calculate those payments and to pay back to CMS the overpayments made based on those incorrect diagnoses.

37.    On information and belief, including Humana's acknowledgement in its 2017 10-K of its obligation to identify errors to CMS in Humana's risk adjustment data submissions and to refund any identified Medicare Advantage overpayments, Humana knowingly failed to delete the HCC diagnoses for Medicare Advantage patients treated at the Medicare Sample Hospitals reported to RAPS in 2016 and 2017 that its subsequent claim denials and audits identified as incorrect and failed to refund to CMS the excess 2017 and 2018 risk adjustment payments that it received from CMS based on those diagnoses.  On information and belief, Humana also knowingly retained risk adjustment overpayments that it received in 2017 and 2018 for incorrect HCC diagnoses for Medicare Advantage patients treated at other hospitals that its claim denials and audits identified as incorrect, but that Humana failed to delete from its prior RAPS submissions for the relevant Medicare Advantage patients.

38.    In 2016 and 2017, Humana executed the required attestations regarding the accuracy of its reported risk adjustment data and were fully aware of their obligation to correct any errors in such data which became known to it at a later time. Humana had ample opportunity to correct its 2016 and 2017 risk adjustment data submissions to CMS given that following the deadline for submitting the risk adjustment data, there is a reconciliation period created for the very purpose of

22

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

744932.v1

allowing Humana to add or delete claims. Furthermore, there is no deadline to return monies owed to the United States to which Humana is not entitled.

39.    Nevertheless, Humana knowingly concealed that the HCC diagnoses that it submitted to CMS in 2016 and 2017 were false in order to retain increased risk adjustment payments from CMS in 2017 and 2018 to which they were not entitled while at the same time denying claims containing the same diagnoses and assessing and collecting overpayments from the Medicare Sample Hospitals and other hospitals based on their denial of the same diagnoses.

40.    Relators estimate that as a result of this fraud scheme, Humana wrongfully retained more than $900 million of the tax payers' money in 2017 and 2018 alone.

## FIRST CAUSE OF ACTION

## FALSE CLAIMS ACT: REVERSE FALSE CLAIMS

### 31 U.S.C. § 3729(a)(1)(G)

### (Against Humana)

41.    The United States repeats and re-alleges the allegations contained in Paragraphs 1 to 40 above as though they are fully set forth in this paragraph.

42.    Between 2016 and the present, defendant Humana knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the United States by failing to delete or correct incorrect diagnoses in the RAPS system that it submitted to CMS to support the Medicare Advantage risk adjustment payments that it received in 2017 and 2018 and failing to refund the risk adjustment overpayments it received for those years based on those incorrect diagnoses to CMS when it had actual knowledge that those reported diagnoses were incorrect because Humana had denied the claims containing such diagnoses or because Humana had subsequently denied those diagnoses in audits of the Medicare Sample Hospitals and other hospitals.

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

23

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

744932.v1

43.    By virtue of defendant Humana's acts of concealment and improper avoidance of its obligation to refund Medicare Advantage risk adjustment payments, the United States incurred damages, according to proof at trial, and therefore is entitled to treble damages under the FCA, plus a civil penalty for each violation of the statute.

## PRAYER

**WHEREFORE**, the United States requests that judgment be entered in its favor and against Humana as follows:

1.    On its First Cause of Action for Reverse False Claims, for the amount of the United States' damages, trebled as required by law, together with the maximum civil penalties allowed by law, costs, post-judgment interest, and such other and further relief as the Court may deem appropriate.

Dated:  January 17, 2020                    Respectfully submitted,

NELSON HARDIMAN LLP

By: _____
    Mark Hardiman

Attorneys for Relator
Advantage Analytics, LLC

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

24

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

744932.v1

## DEMAND FOR JURY TRIAL

The United States of America hereby demands a trial by jury.

Dated:  January 17, 2020                    Respectfully submitted,

                                            NELSON HARDIMAN LLP

                                            By: _____
                                                 Mark Hardiman

                                            Attorneys for Relator
                                            Advantage Analytics, LLC

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

25

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

744932.v1